IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEVERLY A. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10 C 3053 |
| v. ) | |
| ) | Magistrate Judge Nan R. Nolan |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Beverly A. Smith filed this action seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). 42 U.S.C. §§ 416, 423(d), 1381a. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and have filed cross-motions for summary judgment. For the reasons stated below, this case is remanded for further proceedings consistent with this opinion.

## I. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") under Titles II and XVI of the SSA,[1] a claimant must establish that

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq*. The SSI regulations are virtually identical to the DIB regulations and are set forth at 20 C.F.R. § 416.901 *et seq*.

he or she is disabled within the meaning of the SSA. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001); *Keener v. Astrue*, 2008 WL 687132, at *1 (S.D. Ill. 2008). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the ALJ conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on September 21, 2005, alleging she became disabled on November 7, 2004, due to pancreatitis, hypertension, hepatitis C, broken arm and internal conditions. (R. at 55–58, 62, 148, 152.) The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 55–58, 62, 73–82, 87–94, 96.)

On May 20, 2008, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge ("ALJ"). (R. at 10–54, 62.) The ALJ also heard testimony from GleeAnn L. Kehr, a vocational expert ("VE"), and Ashok G. Jilhewar, M.D., a medical expert ("ME"). (*Id.* at 10–54, 62, 126–31.)

The ALJ denied Plaintiff's request for benefits on February 3, 2009. (R. at 62–72.) Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since November 7, 2004, her alleged onset date. (*Id.* at 64.) At step two, the ALJ found that Plaintiff's recurrent pancreatitis, hepatitis C, and history of broken arm and right shoulder are severe impairments. (*Id.*) At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.* at 65.)

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff has the RFC to

---

[2] "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

> frequently lift and/or carry 10 pounds, occasionally lift and/or carry 20 pounds, and sit/stand and walk at least 6 hours each in an 8-hour workday. She has no limitations in her ability to perform fine or gross manipulation. Other limitations include: only occasional overhead reaching with the right upper extremity; only occasional climbing of ramps/stairs, stooping, kneeling, crouching, or crawling; and no climbing of ropes, scaffolds, or ladders; and no more than frequent balancing. She should avoid concentrated exposure to extreme heat/cold and pulmonary irritants such as fumes, odors, dusts, gases and poor ventilation.

(R. at 65.) Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff could not perform any past relevant work. (*Id.* at 70.) At step five, based on Plaintiff's RFC, her vocational factors and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the regional economy that Plaintiff can perform, including work as a retail clerk, office helper, information clerk, housekeeping, and mail clerk. (*Id.* at 70–71) Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the SSA. (*Id.* at 71–72.)

The Appeals Council denied Plaintiff's request for review on March 19, 2010. (R. at 1–5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it

"reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th *Id.* 2002).

## IV. DISCUSSION

Plaintiff raises two arguments in support of her request for a reversal and remand: (1) the ALJ erred in denying her claim without forwarding updated

medical evidence to the ME, obtaining an expert medical assessment of the new evidence, or providing reasons for not doing so in her decision; and (2) the ALJ erred in refusing to send Plaintiff for a consultative psychological examination. The Court addresses each argument in turn.

**A. Physical Limitations**

Plaintiff contends that the ALJ did not properly evaluate new evidence that was submitted, with the ALJ's permission, after the hearing. (Mot. 7–9.) Laboratory results submitted posthearing demonstrated low serum albumin and decreased hematocrit levels. (*Id.* 8.) The ALJ neither submitted this evidence to the ME nor obtained any other medical opinion on the impact of this new evidence. (*Id.*)

*1. The Relevant Medical Evidence*

In February 2005, Plaintiff was admitted to the hospital after sustaining a fracture to her upper right arm. (R. at 250, 291.) Multiple blood tests taken during her 10 days in the hospital indicated serum albumin levels of 3.4, 2.7, 2.3, 2.3, 2.4, 2.1, and 2.3 and hematocrit levels of 31.6, 33.9, 31.8, 28.8, 28.4, 27.0, 27.9.[3] (*Id.* at 253, 255, 257–58.) The ME reviewed these records and testified that Plaintiff's low serum albumin and hematocrit levels were consistent with malnutrition. (*Id.* at 41.)

---

[3] "Serum albumin is a protein made by the liver [and] is well known as a marker for nutritional status. *Mitchell v. Hernandez*, 2011 WL 4710813, at *3 (E.D. Cal. Oct. 4, 2011). Values less than 3.0 suggest advanced cirrhosis of the liver. *The Merck Manual of Diagnosis and Therapy* [hereinafter *Merck Manual*] 203 (18th ed. 2006). "Alcoholism, chronic inflammation, and protein malnutrition also depress albumin synthesis." *Id.*

Hematocrit (HCT) "is a blood test that measures the percentage of the volume of whole blood that is made up of red blood cells." <www.nlm.nih.gov/medlineplus> [hereinafter MedlinePlus]. Normal results in women generally range from 36.1 to 44.3. *See id.* Low hematocrit levels may be due to anemia, bleeding, leukemia, malnutrition, or nutritional deficiencies of iron, folic acid, vitamin B12, and vitamin B6. *See id.*

Because of the fatigue associated with standing for six hours in an eight-hour workday, he opined that if Plaintiff's serum albumin and hematocrit levels remained low, she would be restricted to sedentary work. (*Id.*) The ME speculated that Plaintiff could be suffering from malnutrition, malabsorption, a peptic ulcer, gallstones or celiac.[4] (*Id.* at 42.) Without more information, the ME testified, he could not determine whether Plaintiff has any severe physical impairments. (*Id.*) Accordingly, the ALJ kept the record open after the hearing to allow Plaintiff to supplement the medical record. (*Id.* at 52–53, 191.)

Plaintiff submitted additional medical evidence on September 19, 2008. (R. at 191, 311–52.) Blood tests performed in November 2005 indicated normal serum albumin levels on November 15, 16, and 17, but dropped to 2.7, 2.8 and 3.0 by November 20, 21, and 23. (*Id.* at 327, 329.) At the same time, Plaintiff's hematocrit levels were 39.3, 38.8, 37.1, 30.8, 31.0, and 33.0. (*Id.* at 324–25.) Tests performed from September 23 through October 1, 2006, indicated serum albumin levels of 3.7, 3.2, 2.9, 2.8, and 3.0, and hematocrit levels of 39.0, 33.5, 32.1, and 36.2. (*Id.* at 342–46.) In September 2008, Plaintiff's serum albumin level was 3.9 and her hematocrit level was 34.2. (*Id.* at 352.)

## 2. *Analysis*

In her opinion, the ALJ acknowledged the ME's conclusion that "if [Plaintiff] continued to have both reduced albumin and reduced hematocrit, she might have

---

[4] "Celiac sprue is an immunologically mediated disease in genetically susceptible individuals caused by intolerance to gluten, resulting in mucosal inflammation, which causes malabsorption." *Merck Manual* 144.

malnutrition from malabsorption that could cause fatigue that would prevent her from doing light work." (R. at 67.) In reviewing Plaintiff's blood tests, the ALJ found that she had both low and normal albumin and hematocrit levels from February 2005 through July 2008. (*Id.* at 68.) She concluded that the additional evidence submitted posthearing "confirms that [Plaintiff's] levels of albumin and hematocrit have not consistently both been low." (*Id.* at 67.) Because the evidence "does not show ongoing low levels of both albumin and hematocrit," the ALJ did not restrict Plaintiff to sedentary work. (*Id.* at 67–69.)

Plaintiff contends that the ALJ, in concluding that Plaintiff's albumin and hematocrit levels have not been consistently low, was in essence making a medical determination. (Mot. 8). But "[t]he ALJ is not a medical doctor and cannot, without supporting medical evidence, assess the functional ramifications of these laboratory results." (*Id.*)

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); Social Security Ruling ("SSR")[5] 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically

---

[5] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

Here, the ALJ failed to construct a logical bridge between the evidence and the RFC. Contrary to the ALJ's assumption (*see* R. at 67–68), the ME did not testify that Plaintiff would be limited to sedentary work *only* if *both* her albumin and hematocrit levels were *always* low. Instead, the ME merely opined that he needed more test results to determine if Plaintiff was suffering from malnutrition or malabsorption. (*Id.* at 40–43.) At the time of the hearing, the only tests reviewed by the ME were from February 2005, which indicated low levels of albumin and hematocrit. (*Id.* at 41, 43, 253, 255, 257–58.) The ME did not know that Plaintiff tested with low levels of albumin in October 2005 and September 2006, and with

low levels of hematocrit in October 2005, September 2006, and September 2008. (*See id.* at 191–92.) That Plaintiff had some normal test results during the same time periods may or may not be dispositive. *See Wilder v. Chaer*, 64 F.3d 335, 338 (7th Cir. 1995) (An ALJ may not rely on a hunch.) Indeed, while there was a normal albumin test in February 2005, the ME focused only on the low levels. (*Compare* R. at 257 *with id.* at 43.)

In responding to this issue, the Commissioner merely contends that "on only two days over an almost three-year period was [Plaintiff's] serum albumin level 2.9 or less. One need not be a doctor to determine that this does not satisfy the statutory standard of disability." (Resp. 5.) But the record reveals otherwise. As discussed above, Plaintiff's serum albumin level was less than 3.0 on ten separate occasions from February 2005 through October 2006. (*See* R. at 257–58, 327, 344.) Further, Defendant fails to acknowledge that Plaintiff also had low levels of hematocrit on 13 occasions from February 2005 through September 2008. (*See id.* at 253, 324, 342, 352.)

In sum, there is simply no medical opinion in the record to conclude, as the ALJ did, that the mixture of low and normal test results necessarily means that Plaintiff is not suffering from malnutrition or malabsorption and can still perform light work. "As this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir. 1996). "An ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or

authority in the record." *Clifford*, 227 F.3d at 870. Instead, the ALJ should have consulted with the ME or another medical expert to determine the medical impact of the additional test results. *See Bailey v. Barnhart*, 473 F. Supp. 2d 822, 839 (N.D. Ill. 2006).

## B. Mental Limitations

Plaintiff contends that there was evidence in the record to indicate the presence of psychological impairments. (Mot. 9–10.) She argues that the ALJ erred in reaching her own determination as to the severity of Plaintiff's psychological condition without sending her for a consultative psychological examination. (*Id.* 10.)

### *1. Applicable Law*

By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). An ALJ should bear in mind that a treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*,

345 F.3d 467, 470 (7th Cir. 2003). An "ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Id.*

It is clear that an ALJ may not make an independent medical finding, substituting his own opinion of the medical evidence for that of the claimant's treating physician. *Rohan*, 98 F.3d at 970–71; *see Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) ("Obviously if [the treating physician's medical opinion] is well supported and there is no contradictory evidence, there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it."). If conflicting medical evidence is present, however, it is the ALJ's responsibility to resolve the conflict. *Books*, 91 F.3d at 979 (ALJ must decide which doctor to believe). An ALJ may reject the opinion of a treating physician in favor of the opinion of a nontreating physician in some cases, particularly where the nontreating physician has special expertise that pertains to the case and where the issue is one of interpretation of records or results rather than one of judgment based on observations over a period of time. *Micus v. Bowen*, 979 F.2d 602, 608 (7th Cir. 1992) ("[I]t is up to the ALJ to decide which doctor to believe—the treating physician who has experience and knowledge of the case, but may be biased, or . . . the consulting physician, who may bring expertise and knowledge of similar cases— subject only to the requirement that the ALJ's decision be supported by substantial evidence."); *Hofslien*, 439 F.3d at 377 ("So the weight properly to be given to testimony or other evidence of a treating physician depends on circumstances.").

Thus, the testimony of a medical advisor may be given substantial weight, even if the advisor did not personally examine the claimant. *DeFrancesco v. Bowen*, 867 F.2d 1040 (7th Cir. 1989). Nevertheless, "if an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527.

### 2. *The Relevant Medical Evidence*

In forms submitted to the Commissioner, Plaintiff reported depression, lack of energy, loss of appetite, frustration, stress, nervousness, and an inability to focus. (R. at 177, 184; *see id.* at 187.) Similarly, Plaintiff's mother reported that Plaintiff is barely able to take care of herself, becomes easily frustrated, distracted and angry, lacks interest in things, sometimes starts activities without finishing them, exhibits a limited attention span, and is antisocial. (*Id.* at 161–68.)

During a hospital stay in November 2005 for ethanol-induced pancreatitis, Irina Gubina, M.D., diagnosed Plaintiff with depression. (R. at 311, 314.) Upon discharge, antidepressants were prescribed, including Celexa and Zoloft. (*Id.*; *see id.* at 176.)

Plaintiff testified that she used to be a binge drinker. (R. at 24–25.) She experiences recurring anxiety attacks, which have increased since her sister died in August 2007. (*Id.* at 23–24, 38.) She sometimes hears voices from people who aren't there. (*Id.* at 33.) She has not received psychiatric or psychological care because of a

lack of insurance or funds with which to pay for treatment. (*Id.* at 39.) At the hearing, Plaintiff's counsel requested that she be sent for a psychological evaluation. (*Id.* at 16.) The ME observed that a person experiencing alcohol withdrawal from ceasing to drink would experience significant anxiety. (*Id.* at 43–44.)

### *3. Analysis*

In her opinion, the ALJ declined to impose any nonexertional limitations based on Plaintiff's reported depression and anxiety. (R. at 68.) The ALJ observed that Plaintiff "has not received any treatment and there is no other objective medical evidence in the medical records that supports a finding that this condition is severe." (*Id.*)

Under the circumstances, none of the reasons provided by the ALJ for rejecting Dr. Gubina's opinion are legally sufficient or supported by substantial evidence. First, there is other evidence of Plaintiff's depression and anxiety besides her own testimony. In November 2005, Dr. Gubina diagnosed depression and prescribed antidepressants. (R. at 311, 314.) Moreover, Plaintiff's complaints of depression and anxiety were corroborated by her mother's signed statement. (*Id.* at 161–68.) In the ALJ's opinion, she did not discuss this evidence. Instead, the ALJ observed that Plaintiff did not mention depression or anxiety when she saw her doctor in July 2008. (*Id.* at 68.) But by selectively reviewing the medical file, the ALJ demonstrated a fundamental misunderstanding of mental illness; a person who suffers from depression or anxiety will have good days and bad days. *See Punzio v.*

*Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("But by cherry-picking Dr. Mahmood's file to locate a single treatment note that purportedly undermines her overall assessment of Punzio's functional limitations, the ALJ demonstrated a fundamental, but regrettably all-too-common, misunderstanding of mental illness. As we have explained before, a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition.") (citations omitted); *see also Bauer*, 532 F.3d at 609 ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job.").

Second, the ALJ erroneously rejected Plaintiff's complaints of depression because she had not received any treatment. (R. at 68.) "In assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). But here, Plaintiff testified that she could not afford psychiatric treatment. (R. at 39.) While ALJ observed that Plaintiff had access to a public aid card for one month (*id.* at 68), she failed to discuss this fact with Plaintiff or inquire as to why she did not seek psychiatric treatment during this limited period. The ALJ cannot draw any negative inferences for the failure or infrequency of treatment unless the ALJ has

explored the claimant's explanations as to the lack of medical care. *See id.* ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (citing SSR 96-7p). "An inability to afford treatment is one reason that can 'provide insight into the individual's credibility.'" *Id.* (quoting SSR 96-7p); *see* SSR 96-7p, 1996 WL 374186, at *8 (an explanation for not seeking medical care may include that the claimant is "unable to afford treatment" and does not have "access to free or low-cost medical services").

**C. Summary**

In sum, the ALJ has failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth herein, the ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall reevaluate Plaintiff's mental and physical impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. The ALJ shall consult with a medical expert or obtain a medical opinion regarding the impact of Plaintiff's low albumin and hematocrit levels and send Plaintiff for a consultative psychological examination.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [Doc. 22] is **GRANTED**, and Defendant's Motion for Summary Judgment [Doc. 31] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: February 3, 2012

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge